O’Neall, J.
The point now made in this case was considered, and the whole Court were unanimous in holding, in The State v. M’Kee, that if the jury could not agree upon a verdict in a criminal cause, that the prisoner might be tried again. It is true, that it was not necessary to the decision of that case that this point should have been decided in it, but it was necessarily drawn into discussion and consideration, and it was thought best to express an opinion upon it. After an attentive hearing and a careful consideration of the very full re-argument to which it has now been subjected, I perceive no reason to doubt the correctness of the opinion there expressed. But in stating, in The State v. M’Kee, 1 Bail. 653, 654, the 4th cause for which a jury, after they are charged, can be dis. charged, and the prisoner tried again, it is perhaps stated in a more indefinite manner than it is desiraDle it should be. To remedy this error, and to assign the reasons why we adhere to the opinion expressed in The State v. M’Kee, is my present object. This shall be done as briefly as possible.
It has been supposed in the argument of the prisoner’s counsel, that the provision of the 7th Article of the amend, ments of the Constitution of the United States, “ nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb,” was applicable to this case, and that this Court was bound to act under it. If this were conceded, it does not seem to me that it could profit the prisoner any thing, for on the most favorable footing for him, we should, on deciding under it, have to look back to the common law, from which it was taken, for the rules by which our decision would be formed; and the allowance or disallowance of exceptions to its application, would depend upon the same reasons that they would if they were considerad altogether at common law, without any reference to the Constitution of the United States. But it might, and I think would be the case, if we thought this provision of the Constitution of the United States the rule by which our decision was to be regulated, that the *682 decision of the Supreme Court of the United States in the case of The United States v. Perez, 9 Wheat. 579, would conclude the point now made. For it was a question arising there directly under this provision of the Constitution of the United States, and in a Court charged for all the States of the Union with its exposition, in all cases in law and equity arising under it. But it seems to me that this provision of the Constitution of the United States relates altogether to the administration of justice in the Courts, or by the authority of the United States, as a nation. In the States considered as Separate communities, and in the administration of justice by their respective authority, the Constitution or the law, statute or common, of each, must constitute the rule by which the Courts of each, are in the respect now under consideration, to be regulated. It was said, in The State v. M’Kee, the common law maxim that “no man shall be twice put in jeopardy of his life for the same offence,” is (he foundation of the rule, which in general, would prevent the arrest of the trial of a prisoner, after the jury are charged with his case. For then, if he is on trial on a valid indictment, his jeopardy of life, in general, has commenced. But if in point of fact, neither acquittal nor condemnation could result from the jury then charged with the case, this shews that the prisoner was not then in jeopardy of life in that instance, and hence this maxim of the common law cannot shield him. This is, I think, the foundation of all the four exceptions stated in The State v. M’Kee. For it will be perceived on looking to and considering them, that in no one instance covered by them, could a legal verdict have been rendered, unless it be in the first, in which, however, the consent of the prisoner waives his right to demand the verdict. It will not, however, be necessary to examine any of the exceptions alluded to by the fourth, which is the point now 'before us.
I am willing to admit, as I did in M’Kee’s case, that the Court has no other discretion in discharging a jury, and remanding a prisoner for a second trial, than a legal one. If, therefore, the Court should, even without the warrant of law, discharge a jury and remand a prisoner for a second trial, I should deprecate it as much, and feel it to be as dangerous an innovation on liberty as it is possible for the eloquent counsel for the prisoner to conceive or describe. But it is the part of justice not to quail in the discharge of a legal duty, for fear some possible case may arise in which the results of evenhanded justice may not be perceived or appreciated.
It is necessary, therefore, to see whether the Court in this case has exercised any other than a legal discretion in discharging the jury and remanding th.e prisoner. It appears *683 that the jury were kept together until the clock was striking twelve at night on Saturday, the last day of the Term for Richland district; they were then discharged and the prisoner remanded. These faets shew that the judge below exercised no discretion of his own; but that he supposed (as I think legally) that the jury by law were entitled to be discharged ; and not having agreed on a verdict until the term for which they were impannelled had expired, no trial had taken place, and the prisoner had incurred no jeopardy of life. The case will therefore be considered as if in the presence of the Court, at the striking of 12 o’clock of the last night of the Term, the jury had came into Court, saying ‘ we cannot agree,! and returned the indictment to the clerk, and the prisoner had been left in prison, as in legal contemplation he is regarded to be until discharged in due course of law. For this is exactly what was done by the order made in this case. Is the prisoner legitimo modo acquietatus? is one question which arises. It is answered by the fact that no verdict has been rendered. Does-the law prohibit his second trial ? is the next and only question then to be decided. If he had been tried and condemned on an invalid indictment, and the judgement had been arrested on his motion, he must have been again tried. Why 1 Because he was in that trial in no jeopardy of life; no legal judgement of condemnation could be or was pronounced. This is a legal position which requires only to be stated, and it must be admit, ted by every lawyer. Does not the reason on which it is founded reach this case 1 It is clear that it does, if the jury could not be kept together and compelled to consider of their verdict beyond the expiration of the Temúfor which they were impannelled. For in such case no legal judgement of condemnation could by any possibility be given. It is necessary, therefore, to consider whether, according to our law, the jury may be kept together after the Term for which they are im-pannelled. I denied, in M’Kee’s case, the power of the Court to keep them together beyond the Term : and the brief reasons there assigned are amply sufficient to sustain it. But as the subject is again before us, I will consider it a little more minutely. The organization and jurisdiction of our Courts of General Sessions of the Peace, Oyer and Terminer, Assize and General Gaol Delivery, are essentially different from the Courts of the same description in Great Britain. The latter are organized for the realm, and have jurisdiction as criminal Courts, co-extensive with it. It is true they sit to administer justice at particular places, and must there hear all offences committed within that county, yet their jurisdiction being general, they may at any other place receive the verdict and pronounce judgement of death. In this State our Courts are *684 Circuit Courts for particular sections of the State, called dis-tncts, and limited to commence on a particular day, and to end at ^10 exph'ation of a certain time. So soon as that time has expired the Court ceases. The judge is no longer entitled to t¡le cr¡minai jurisdiction of trying and determining criminal causes. He ceases to have that power for that district until the next Term to which the Court is adjourned, and at which another judge most usually attends. In the next district another Court commences ; but it has no power over the subjects of criminal jurisdiction which may have arisen in the preceding district. So that from this very difference in the organization of the Courts of England and this State, it follows that the power of keeping the jury together beyond the Term, and carting them round the circuit until they do agree, which may exist in England, does not exist here, and any judge who might attempt to exercise such a power, would find himself liable to an action of false imprisonment, at the instance of every jury-man thus kept and detained. If, however, there could be any doubt about the matter after this view, it certainly will be removed by a provision in the Circuit Court Act of 1769, P. L. 271, and by provisions of other acts of our Legislature. The 14th section of the Act of 1769 provides, “ And no person shall be obliged to serve as a juror out of the district or precinct wherein he shall by this act be liable to serve, after Courts have been therein respectively holden.” This not only prevents a citizen of Richland from being summoned and impannelled for Orangeburg, but also enables him to say when impannelled for Richland, “ I cannot be compelled to serve as a juror out of my own district.” This at once demolishes, according to statute law, the notion of carting the jury around the Circuit. In all the acts of the legislature extending the sessions of different Circuit Courts beyond six days for each, there is a provision to draw, summon, and impannel distinct juries for each week of the Term. I will take the act of 1821, “ to prolong the sittings of the Court of Common Pleas and General Sessions for Richland,” as the most apposite to the case in hand. It provides that “ it shall be the duty of the presiding judge, at each succeeding Court for the said district of Richland, to cause to be drawn, in addition to the usual number of grand jurors to attend the said Court, the number of ninety-six petit and common pleas jurors, which number shall be divided into two classes ; the first class shall be summoned to attend the sittings of the said Court on the fourth Monday in March and October in each and every year; and the second class shall be summoned to attend the sitting of the said Court on the first Monday after the fourth Monday in March and October in each and every year.” The jury summoned to *685 attend the sittings of the Court on the fourth Monday in March or October, or the first week of the Term, could not, under this act, be required to sit beyond the first week, for on Monday of the succeeding week, another jury is by law to succeed them. The law allows not this double set of juries. The jury of the second week is only required to attend “ the sitting of the said Court,” (for Richland). When it ceases to sit, by operation of law they are legally discharged ; for the authority to detain them is gone. They have nothing to attend to as jurors. This view, that jurors can only be continued during the sitting of the Court, or the Term for which they are im-pannelled, is strengthened by every provision of the act of 1816, to make compensation to them. The act of 1818, to authorize and require juries impannelled in Charleston district, to sit in certain cases beyond the term of one week, for which they are impannelled, is decisive of the matter. It recites that, “ Whereas, by the Act of the General Assembly of this State, juries are directed to be impannelled for the district of Charleston, to sit for the term of one week only, although the times established for holding the Courts of the said district are of several weeks duration, and many causes of litigated and important nature, commenced and not determined within the Term for which the said juries are so impannelled, as aforesaid, prove to be mis-trials, and very great delays and manifest injustice are occasioned thereby ; it is therefore enacted that any jury in Charleston district, which shall be hereafter im-pannelled and charged with the trial of any issue, civil or criminal, whose term of one week shall terminate or expire before the final decision of such issue, such jury shall not be discharged, as heretofore, but it shall and may be lawful for the presiding judge to adjourn the said jury to the ensuing week, in like manner as juries are adjourned from day to day ; and such jury shall duly attend at the time to which they are so adjourned, and resume the consideration of such issue, until such jury shall have finally made up their verdict and disposed of such issue, or otherwise bo lawfully discharged from the consideration thereof, any law, custom or usage, to the contrary hereof, in any wise notwithstanding.” A proviso accompanies the succeeding clause, whereby it is expressly provided that this act shall not extend the Terms already appointed by law, for holding the said Courts for Charleston district. This act constitutes a plain exposition of the view of the legislature, that juries could not be detained, except by express provision, beyond the Term for which they were summoned. For there is no difference between the obligation of juries to attend the Court, under the former acts regulating the attendance of juries in Charleston, and the acts requiring the attendance of juries *686 in other districts where the Courts sit more than one week. In them, as we have already seen from the example of Rich-land, which we have considered, the juries are not bound to attend beyond the week for which they are summoned. It would hence follow, as a plain legislative sanction, that in all places except Charleston, the jury could not for any cause be detained beyond the week for which they were impannelled. From the reservation contained in this act, that it should not have the effect to extend the Terms in Charleston, it is a plain and necessary consequence that even under its provisions a jury could not, in Charleston, be continued beyond the adjournment of the Court: if so, is not the inference irresistible, that the legislature admitted that in all other places, and in all other Courts, the jury, at the expiration of the Term, were entitled to be discharged ? The general provisions of the jury law require the jury which it authorizes to be drawn, to serve “ at the said Court of General Sessions of the Peace, Oyer and Terminer, Assize and General Gaol Delivery.” P. L. 124. When the said Court is ended by the expiration of the time fixed by law for its continuance, does it not follow that the jury are discharged by law ? I think so. They have obeyed it, and it can require nothing else. From these views I have come satisfactorily to the conclusion, that at 12 o’clock of Saturday night, the last day of the Term for Richland district, the jury were, by law, discharged from any further attendance at that Term, which was then ended, and Court ceased to be held for that district; and that not having agreed on a verdict, no trial of the prisoner was had — that he remains in custody of the law, and must be tried, acquitted or condemned, by the verdict of his peers.
But it is said that the act of 1751 has provided for a second trial of an issue after it has been committed to the jury, only in the cases, 1st. when one of the jury should die, 2nd. be taken so ill as to be unable to try the same, 3d. be withdrawn by leave of the Court and consent of the parties, P. L. 253. It is true that act does provide, that in any of these cases the Court may draw other jurors and proceed with the trial. It has, however, no application to this case. Its provisions were merely for the purpose of enabling the Court at the same Term to complete the jury thus rendered imperfect, and “ to proceed in the trial of such cause in which such accident shall happen.” It does not relate to cases where the cause has been fully committed to the jury: and in consequence of the accidents enumerated, no verdict has been rendered, and it is therefore about to he tried at another Term, If ore the jurors regularly drawn for the said Term.
*687 The conclusion to which we have come, that the prisoner cannot be discharged but must be tried again, is in conformity to the decisions of the Supreme Court of the United States and of every State in the Union, so far as we are informed, except North Carolina. In the case decided in that State and reported in Haywood’s Reports, 241, I do not regard the decision as necessarily conflicting with our conclusion. For the jury there separated without the knowledge of the judge, and I presume before the expiration of the Term of the Court. These facts constitute a sensible ground of distinction between that and this case.
In coming to a conclusion unfavorable to the prisoner, we have not looked to considerations of policy ; we have felt that we have no discretion to exercise ; that the law as it is, and not what it ought to be, was our guide. But in administering the law it is no small consolation to know that we have also administered exact justice. On the present occasion that seems to us to have been also attained, and that our decision here inflicts no individual hardship, and will prevent a possible abuse of justice hereafter.
1 admire too much the merciful rules of the criminal law ever to concur in subverting one of them ; but at the same time, I too much love the preservation of law and order, to consent that the accused shall escape until at least he has been tried and acquitted by a verdict of his peers, or some known rule of law.
The motion to reverse the order of the judge below, and for the discharge of the prisoner, is dismissed.
Johnson and Harper, Js. concurred.